## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| ANGIE LEA WEIBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-240-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Angie Lea Weible, seeks review of the final decision of the Commissioner

of the Social Security Administration denying her application for disability insurance benefits.

She claims that she is unable to work due to a combination of physical and mental conditions.

For the reasons stated in this Opinion and Order, the Court finds that there exists a basis to

remand for further review.

## PROCEDURAL HISTORY

In August 2014, the Plaintiff filed a claim for disability insurance benefits, alleging

disability beginning in July 2014. The state agency responsible for making disability

determinations on behalf of the Commissioner denied the Plaintiff's claim initially and upon

reconsideration. The Plaintiff sought appeal of those determinations and filed a request for a

hearing before an Administrative Law Judge (ALJ). In April 2016, the Plaintiff, who was

represented by an attorney, appeared and testified at a hearing before an ALJ. The ALJ also

heard testimony from a vocational expert (VE). In June 2016, the ALJ issued a written decision,

in which he concluded that the Plaintiff was not disabled because she was capable of performing representative sedentary, unskilled occupations such as circuit board tester, eyeglass assembler, and costume jewelry maker. In arriving at this conclusion, the ALJ employed the familiar five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also* 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *id.* § 423(d)(2)(A) (requiring an applicant to show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy").

At the first step, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 3, 2013. At step two, the ALJ found that the Plaintiff suffered from numerous "severe" impairments, meaning that they significantly limited her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments were fibromyalgia, back pain, lumbago, degenerative disc disease of the lumbar spine, knee pain and arthralgias, left wrist pain and athralgias, obesity, hypertension, anemia, leg neuropathy, a history of migraine headaches, vision problems with presbyopia, myopia and bilateral astigmatism, depression, generalized anxiety, social anxiety, obsessive-compulsive disorder, and a reported learning disorder in reading and written expression. The ALJ did not find that these impairments, alone or in combination, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively

precludes substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she could lift, carry, push, and pull ten pounds occasionally and only five pounds frequently. Other restrictions included a sit-stand option, postural limitations, and no forceful gripping and grasping with the dominant left hand. To account for the Plaintiff's attention, concentration, and focus deficits, the ALJ limited her to no more thirty minutes of tasks requiring intense focus. Additionally, she could only occasionally interact with others, including supervisors, coworkers, and the general public. Due to her limitations from her learning disorder, the Plaintiff was limited to work involving only occasional reading. She needed to avoid concentrated exposure to loud noise, and bright and flashing lights because of her persistent migraine headaches. Her vision problems were accommodated in the RFC by a work environment the required only occasional depth perception, only occasional reading or computer work, and no exposure to hazards such as moving machinery or unprotected heights.

At the final step of the evaluation, the ALJ determined that the Plaintiff could not perform any past relevant work. However, because of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there were a significant number of jobs in the national economy that the Plaintiff could perform. The ALJ relied on the testimony of a vocational expert (VE) to find that the Plaintiff could perform the requirements of representative sedentary,

unskilled occupations such as circuit board tester (117,000 jobs nationwide), eyeglass assembler (103,000 jobs nationwide), and costume jewelry maker (165,000 jobs nationwide). At the hearing, the Plaintiff's moved to strike the VE's testimony regarding the number of jobs available nationwide. In his written decision, the ALJ denied the motion, citing the Agency's ability to take administrative notice of job data and to rely on the testimony of a VE when resolving vocational issues.

The Plaintiff sought review of the ALJ's decision by the Appeals Council. In April 2017, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400.

In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

The Plaintiff asserts that the ALJ failed to incorporate into her RFC all the limitations from her medically determinable impairments, both severe and nonsevere. Specifically, the ALJ did not include limitations for the Plaintiff's insomnia or her hyperhidrosis. The Plaintiff argues that she had substantial sleep problems that affected her ability to function during the daytime. She maintains that "[l]imiting her to unskilled, sedentary work is insufficient to accommodate someone who only sleeps four hours a night, takes pain medications, and must fight multiple impairments, many of which compound the impact of inadequate sleep." (Pl.'s Opening Br. 15, ECF No. 20.) She contends that her hyperhidrosis required her to take breaks at unpredictable times to wipe off sweat or to change clothing. The Defendant responds that there was no

indication in the record of functional limitations related to the alleged impairments. The Defendant also notes that the ALJ considered a clinical treatment note from June 2015 in which the Plaintiff reported that medication was working, and she was receiving restful sleep.

Upon reviewing the record, the Court is not confident that the ALJ considered all the evidence and gave appropriate consideration to the combined effects of the Plaintiff's impairments. An "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

> The ALJ must determine an individual's RFC, or what an individual can still do despite his or her limitations, based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling. However, a determination need not contain a complete written evaluation of every piece of evidence.

*Murphy v. Colvin*, 759 F.3d 811, 817–18 (7th Cir. 2014) (quotation marks, brackets, and citations omitted). The combination of a claimant's impairments "might well be totally disabling" even if each of the claimant's impairments standing alone is not serious. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). Additionally, an ALJ's hypothetical to the VE must "include all limitations supported by medical evidence in the record." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (citation omitted).

The ALJ stated that the Plaintiff's fatigue was accommodated in her RFC because the ALJ limited  her to sedentary work. But the Plaintiff's fatigue was not merely a problem that

surfaced when she engaged in activity above the sedentary level. It was, according to the Plaintiff, also due to getting only four hours of sleep on average per night. The Plaintiff is correct in noting that the ALJ did not factor complications from receiving only four hours of sleep on a consistent basis into the RFC analysis. The ALJ did not even acknowledge her testimony on this point and determine what weight to provide to her testimony. The ALJ did acknowledge that the Plaintiff described having ten bad days a month in which she must stay in her bedroom. This, however, was not factored into the RFC because the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 23.)

The ALJ relied on several factors to conclude that he could not "rely heavily on the claimant's subjective complaints." (R. 24.) He noted that the Plaintiff had been noncompliant with her medications at times, that a review of her Function Report described daily activities that "were not limited to the extent one would expect, given her testimony of disabling symptoms and limitations," and that she cared for her children at home. (*Id.*) The ALJ also gave "slight weight" to his own observations of the Plaintiff at the hearing. (*Id.* (noting "a general absence of any obvious signs of pain or discomfort while the claimant was testifying").)

Neither the ALJ's observations of the Plaintiff at the hearing, nor the cited instance of noncompliance with medication would appear to have anything to do with whether the Plaintiff suffered from insomnia and related functional limitations. That leaves the ALJ's analysis of the Plaintiff's daily activities as the sole reason offered to disbelieve the Plaintiff's statements about her fatigue and days spent in bed. The Court finds this analysis to be flawed or, at the very least, insufficient to permit meaningful judicial review. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th

Cir. 2000).

The ALJ provided the following explanation:

[T]he claimant is able to care [for] her children at home, which can be quite
demanding both physically and emotionally, without indication that she requires
consistent assistance. This becomes a salient point as the claimant reported she was
"stay at home mom" (B6F/69). While the claimant does not appear to be paid for this
work, there is an indication from her activities of daily living that she performs this
work well. It also raises some questions as to whether the current unemployment is
truly the result of medical problems or a choice the claimant and her significant other
made.

(*Id.*) The logical bridge for the ALJ's conclusions is missing.

In her Function Report, the Plaintiff indicated that she woke her daughter for school,

made breakfast, drove her daughter to school, and did light house work. However, this work took

all day to complete because the Plaintiff took breaks. The Plaintiff further explained that it took

her a lot longer to complete tasks because she lost concentration and had to start over, and that

concentrating for too long resulted in her getting a headache. Additionally, she required

assistance with anything that required lifting, such as laundry, cooking with pots and pans, and

moving the sweeper from one level to another. She only completed dinner with the help of her

husband, and the other meals she prepared consisted of oatmeal, toast, sandwiches, and salads.

Notably, the Function Report did not ask the Plaintiff to distinguish between good and bad days.

At the hearing before the ALJ, the Plaintiff described a typical day as follows:

I get up at 6:30 in the morning on a school day and take all my morning medication,
use the restroom, and then I go wake up my daughter. And then I will make myself
either a piece of toast or a bowl of cereal and sit down and wait until it's time to take
her to school. And then I come back home at . . . about 7:50 to 8:00 and I'll sit for
a little bit because I'm tired, and then I'll get up and I'll clean one room or another.
Then I have to sit down for about an hour to rest. And it normally takes me eight
hours to make it through a whole house. And then in the evenings we make dinner
together and do the dishes together, and then I'm pretty much done for the night. And
once I sit down I can't get back up on my own.

(R. 65–66.) The Plaintiff testified that she was "always tired" and felt "weak," but that she tried not to nap because she does not fall asleep at night. (R. 66.) The Plaintiff stated that she got about four hours of sleep at night, and did not wake up refreshed. The Plaintiff clarified that, for making dinner, she would tell her husband how to make it, but not make it herself. The only activity the Plaintiff said she could do the next day after doing an entire day of household chores was taking her daughter to school and picking her up. The Plaintiff testified that during bad days, which occurred about ten times a month, she would spend the day in her bedroom because of the pain in her back or by a headache, or because she is "really upset and sad." (R. 71.)

It is not evident, based on the activities the Plaintiff cited in her Function Report and in her testimony, what level of "demanding" care the ALJ thought that the Plaintiff provided to her children. The ALJ's written decision does not mention that the Plaintiff's daughter, who was the only child under her care, was fifteen years old at the time of the hearing and spent the day at school. Moreover, there is nothing in the record upon which to opine, one way or another, whether the Plaintiff's decision not to be employed outside of the home was a personal decision unrelated to her physical and mental condition. The ALJ did not mention that the Plaintiff had a long and constant work history, a factor that may have entitled her statements that she was unable to work to more deference. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). Finally, the ALJ's finding that the Plaintiff performed the activities she did at home well was based on the Plaintiff's description of her activities of daily living. However, the ALJ did not account for the limited manner in which the Plaintiff alleged she performed these activities, or that she required assistance for many of the tasks. The Court also notes that the ALJ appears to discount the Plaintiff's testimony that she had bad days simply because she did not say so in the Function

9

Report when she described her daily activities. However, as stated above, the Function Report did not ask the Plaintiff to distinguish between good and bad days, or to describe her worst day.

The Seventh Circuit has "cautioned that a person's ability to perform daily activities, especially if th[ey] can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Although "it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility," it must be "done with care." *Id.* While the Court is mindful that an ALJ's credibility determinations are entitled to special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), the ALJ is still required to "build an accurate and logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks omitted); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements"). Moreover, unsupported judgments regarding a plaintiff's ability to perform the activities of daily living "are not the sort of credibility determinations entitled to deference." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016).

After the ALJ discounted the Plaintiff's subjective complaints, he then moved on to rely "greatly on the available objective medical evidence of record and the qualified medical opinions." (R. 24) In taking this approach, the ALJ's decision does not explain why he found that the objective medical evidence does not support the Plaintiff's allegations of limited functioning. *See Clifford*, 227 F.3d at 872; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) ("The ALJ should have explained the 'inconsistencies' between [the claimant's] activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence.")

(quoting *Clifford*, 227 F.3d at 870–71.) "Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight." *Zurawski*, 245 F.3d at 888 (quoting *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986)). The Plaintiff's problems with headaches and with insomnia appear throughout the medical records. Although the Defendant is correct that the ALJ cited to a record from June 2015 in which the Plaintiff reported restful sleep, the Plaintiff has highlighted other records from a later date that indicate her insomnia was not resolved. Remand will permit the ALJ to reconcile these records with each other, and also with the Plaintiff's subjective complaints, in order to more fully analyze the Plaintiff's statements.

The Plaintiff argues that remand is necessary for another reason. She contends that the VE's testimony regarding the number of jobs that are available in the national economy for a particular vocational profile should have been stricken. An ALJ may rely on testimony from a VE to "supplement the information provided in the [*Dictionary of Occupational Titles*] by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011); *see also Taylor v. Colvin*, 829 F.3d 799, 801 (7th Cir. 2016) (noting that the use of vocational experts is "customary"). Any data or reasoning underlying the VE's bottom line must be "available on demand" so that the claimant may test the reliability of the VE's testimony. *McKinnie v. Barnhart*, 368 F.3d 907, 910–11 (7th Cir. 2004) (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Additionally, "if the basis of the VE's conclusions is questioned at the hearing, . . . the ALJ should make an inquiry (similar though not necessarily identical to

that of Rule 702) to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446. The ALJ did not make any such inquiry here, despite the claimant's objection to the VE's methodology. Nor did he explain his evaluation of the VE's testimony in his written decision. Instead, the ALJ simply noted that "the Agency is able to take administrative notice of job data," and "may use vocational exert testimony when resolving vocational issues." (R. 16.) On remand, the ALJ should ensure that the VE's testimony regarding the number of jobs that exist in the national economy is reliable.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED for rehearing.

SO ORDERED on May 10, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT